IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Shawnta Tracey, | ) | C/A No.: 1:12-1614-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Kirkland Correctional Institution Warden Bernard McKie, Staff, and Officers; and Evans Correctional Institution Warden Willie Eagleton, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Shawnta Tracey ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action, which is construed as brought pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Kirkland Correctional Institution ("KCI") and Evans Correctional Institution ("ECI"). Plaintiff names as defendants KCI Warden Bernard McKie and ECI Warden Willie Eagleton ("Defendants"). Before the court is Defendants' motion for summary judgment [Entry #46]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.    Factual and Procedural Background

Plaintiff alleges he was housed with two other inmates in a two-man cell for 49 days. [Entry #13 at 3]. He claims he was forced to sleep on the floor next to the toilet and

that "no cleaning supplies [were] made available to sanitize the cell, toilet, floor, etc." *Id*. Plaintiff alleges that he now has "a medical issue of Stys relating to [his] eyes" that he believes was caused by the purportedly unsanitary conditions at KCI. *Id*. The amended complaint also claims that the defendants failed to provide: (1) a sufficient amount of nutritious food; (2) a sufficient amount of toilet paper and other hygiene supplies; (3) adequate opportunity to shower; (4) adequate outside recreation; and (5) Muslim religious services and materials. *Id*. at 3–4. Plaintiff indicates that he has "developed swelling in the ankles," which he attributes to the lack of exercise at both KCI and ECI. *Id*. at 4. Plaintiff seeks injunctive relief and monetary damages. *Id*. at 5.

Defendants filed their motion for summary judgment on December 19, 2012. [Entry #46]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #47]. Plaintiff filed a response in opposition to Defendants' motion on January 25, 2013. [Entry #54]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden,

2

then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine dispute of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

Defendants contend that they are entitled to summary judgment on Plaintiff's

claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [PLRA], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the

4

warden of his facility via a "Step 2 Grievance."

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (internal citations omitted). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Here, a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation. [Entry #46-1 at ¶ 7]. Plaintiff does not dispute his failure to exhaust his administrative remedies. Rather, Plaintiff complains that grievance forms are not readily available and grievances are required to be brought within 15 days of the incident. However, Plaintiff has failed to allege any specific instances where he asked for a grievance form and was denied the same. Plaintiff's vague and general allegations regarding the grievance process are insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims. Therefore, this court lacks jurisdiction over Plaintiff's claims and Defendants are entitled to summary judgment on all claims. However, because Plaintiff alleged grievance forms were not available, and in the event the district judge disagrees with the undersigned's assessment of Plaintiff's failure to exhaust, the undersigned analyzes Plaintiff's claims on the merits as well.

      2.      Conditions of Confinement

Plaintiff alleges various conditions of his confinement are unconstitutional. Specifically, he alleges the following:[1] (1) he was forced to sleep on the floor next to the toilet because three men were housed in a two-man cell; (2) he was not provided cleaning supplies to properly sanitize the cell; (3) he was given one razor a week and required to shave every day; (4) three inmates were required to share 2 rolls of toilet paper per week; (5) his showers were limited to three times per week for five minutes each; (6) the food was of poor quality and was not always fit for human consumption; (7) he has no way to sanitize his cup and spork after eating; (8) recreation is "seldom" provided; and (9) inmates are not provided napkins with meals.

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must

---

[1] It appears that most of Plaintiff's allegations concern the conditions at KCI, where Plaintiff is no longer incarcerated. However, in the interest of construing the complaint broadly, the undersigned addresses the allegations together.

6

allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id*. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler*, 989 F.2d at 1380–81.

Assuming the allegations in Plaintiff's complaint to be true, he has not shown that the conditions of confinement he complains of rise to the level of a constitutional violation. Although Plaintiff claims that he has been fed food that was outdated and rotting, he does not allege that this happened regularly. "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985). However, a prisoner is entitled only to reasonably adequate food. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*. Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment. *Bedell v. Angelone*, No. 2:01-cv-780, 2003 WL 24054709, *14

7

(E.D.Va. 2003), *aff'd per curiam*, 87 Fed. Appx. 323 (4th Cir. 2004) ("Being served rotten food is unpleasant and unfortunate; however, it simply does not rise to the level of a constitutional violation because Plaintiff has not shown that it resulted in a serious deprivation or that Defendants were deliberately indifferent."). The Constitution does not guarantee, however, food that is prepared and served in a culinarily pleasing manner. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); *see also Lasure v. Doby*, C/A No. 0:06–cv–1527-RBH-BM, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (unpublished) (noting that plaintiff was "being held in a[ ] jail facility, not a hotel").

Plaintiff's claim that he shared a two-man cell with two other inmates also fails to rise to a constitutional level. It is "well established that 'double or triple celling of inmates is not per se unconstitutional.'" *Hause v. Harris*, C.A. No. 0:07–270–JFA–BM, 2008 WL 216651, at *7 (D.S.C. January 23, 2008) (citing *Mathias v. Simpkins*, No. 07–31, 2007 WL 1577336, at *2 (W.D.Va. May 31, 2007)). Here, Plaintiff has provided no evidence that Defendants actually knew of and disregarded a substantial risk of serious injury to him. *See Coclough v. Major*, C.A. No. 6:07–2900–HMH–WMC, 2008 WL 1744556, at *4–5 (D.S.C. April 10, 2008) (citing *Parrish v. Cleveland*, 372 F.3d 294, 302–303 (4th Cir. 2004)). Plaintiff also claims that sleeping beside the toilet caused him to develop styes. [Entry #13 at 3]. Although Plaintiff's medical records evidence that he has suffered from styes [Entry #46-3 at 1], he has provided no information beyond his own subjective belief that the styes were caused by his sleeping conditions.  Furthermore, he has not alleged that he ever complained to Defendants that his sleeping arrangement

8

was causing him any harm. Therefore, Plaintiff has failed to show that Defendants acted with deliberate indifference with regard to his sleeping on the floor.

Plaintiff next generally claims that he has developed swelling in his ankles due to a lack of exercise. "[I]n certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980). The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence demonstrating "that he has sustained a[ ] serious or significant physical or emotional injury as a result of these conditions." *Strickler*, 989 at 1381. Plaintiff has not produced any evidence that the swelling in his ankles was caused by a lack of exercise. Additionally, Plaintiff has not shown that he has ever complained to Defendants that his lack of exercise was causing his ankles to swell.

With regard to Plaintiff's other complaints regarding his conditions of confinement such as the limited number of toiletries, cleaning products, or shower time, Plaintiff has failed to show that he has suffered any serious physical of emotional injury from the alleged deprivations. Therefore, Plaintiff has failed to show that his allegations regarding his conditions of confinement rise to a constitutional violation, and the undersigned recommends Defendants be granted summary judgment on these claims.

3.     Plaintiff's claims of denial of religious freedom

In his complaint, Plaintiff also claims that while he was incarcerated at KCI, he was not issued a Qu'ran, was not allowed to attend Muslim services, and no Muslim chaplain was available. [Entry #13 at 4]. It is well-established that a prisoner retains his

federal constitutional right to freedom of religion pursuant to the First Amendment, and prisoners must be afforded "reasonable" opportunity to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). However, even when religious freedoms are at issue, prison administrators must be afforded "latitude in the administration of prison affairs." *Id*. As the United States Supreme Court has noted "[i]n the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A prison policy "alleged to infringe constitutional rights [is] judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate Shabazz*, 482 U.S. 342, 349 (1987).

In order to make this reasonableness determination, the court must consider four factors: (1) whether the disputed decision is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Significantly, the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Here, Plaintiff has not alleged a particular policy at KCI violated his religious freedom or that KCI violated its religious policies as applied to him. In fact, Plaintiff has

10

not alleged that he requested a Qu'ran or notified Defendants that he wished to attend Muslim services and his response to Defendants' motion does not address his allegations regarding the alleged violations of his religious freedom. Therefore, it appears that Plaintiff wishes to abandon the allegations in his complaint regarding his religious freedom. To the extent Plaintiff has not abandoned these claims, he has not overcome his burden of showing that Defendants unconstitutionally burdened his right to practice his religion. Therefore, it is recommended that Defendants be granted summary judgment on Plaintiff's claims related to violations of his religious freedom.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [Entry #59] be granted.  If the district judge accepts this recommendation, Plaintiff's motion to compel [Entry #50] will be rendered moot.[2]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 2, 2013                                      Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[2] A review of Plaintiff's discovery requests [Entry #53-1] reveal that the documents sought were intended to prove the factual allegations of the complaint. Because this recommendation assumed Plaintiff's factual allegations to be true, any decision on Plaintiff's motion to compel, which was filed almost a month after the deadline for the completion of discovery, would not affect the recommendation contained herein.

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).